IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

Ernest Wright, ) CIVIL ACTION NO. 9:11-2839-RBH-BM
)
      Plaintiff, )
)
v. )
) **REPORT AND RECOMMENDATION**
Officer Harley, Nurse Weber and )
Willie Bamberg, Orangeburg County )
Jail Director, )
)
      Defendants. )
_____)

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate with the South Carolina Department of Corrections, alleges violations of his constitutional rights by the named Defendants when he was a pre-trial detainee at the Orangeburg County Jail.

The Defendants[1] filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on February 22, 2012. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on February 23, 2012, advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted, thereby

---

[1] Inmate Michael Hartwell was initially also a Defendant in this action, but he was dismissed as a party Defendant by Order filed January 4, 2012. The motion for summary judgment has been filed by the remaining Defendants.



ending his case. After receiving an extension of time to respond, Plaintiff filed a response in opposition to the Defendants' motion on April 2, 2012.

The Defendants' motion for summary judgment is now before the Court for disposition.[2]

**Background and Evidence**

Plaintiff alleges in his verified Complaint[3] that on April 15, 2011 he was assaulted and beaten by another inmate (the previously dismissed Michael Hartwell). Plaintiff alleges that around 2:00 a.m. he was booked into the jail and taken to "pod B", where the Defendant Harley (a jail officer) was "on watch in [the] security booth". Plaintiff alleges that Harley "just pop[ed] the door from inside [the] booth and told me to go in", when he should have walked Plaintiff to the cell. Plaintiff alleges that once inside the cell, he started to prepare for sleep when the other inmate housed in the cell (Hartwell) "jump up and commenced to beating me with out any just cause." Plaintiff alleges that during the attack he was yelling and beating on the door to try and gain someone's attention, and that "after about 10 mins of beating the officer came running into the room to set me free." Plaintiff alleges that he suffered a cut above his eye that required stitches, and that he also had "a chunk bit out of my nose."

Plaintiff alleges that he was taken to the Orangeburg County Regional Hospital, and

---

[2] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this motion is dispositive, this Report and Recommendation is entered for review by the Court.

[3] In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).



that the County Sheriff's Office was notified. Plaintiff alleges that a "Sgt. Hunter" compiled a report and took photographs of his injuries, following which he was "taken back to the same living area." Plaintiff alleges that after this assault, Hartwell was taken to the lock down area for fourteen (14) days, and was then returned to the pod and placed "only a few doors away from me." Plaintiff alleges that for "2 months straight" he was fearful of leaving his room or coming out into the recreation area. Plaintiff also complains that the "rooms" don't have "call boxes" or anything of that nature in case of emergencies.

Plaintiff further alleges that a "Dr. Singleton" prescribed him Tylenol 3, but that the Defendant Nurse Webber refused to give him anything except regular Tylenol. Plaintiff also alleges that he complained of "serious headaches and [a popped] blood vessel in [his] eye", but that he was not taken for any further examinations and was not given any other medications. Plaintiff alleges that the Defendant Bamburg is the Director of the Jail and is responsible for how it operates. Plaintiff seeks monetary damages, as well as certain injunctive and/or declaratory relief. See generally, Verified Complaint.

In support of summary judgment in the case, the Defendant David Harley has submitted an affidavit in which he attests that he is an officer at the Orangeburg-Calhoun Regional Detention Center. Harley attests that on the night of April 15, 2011, at approximately 12:45 a.m., he was working the control booth when Plaintiff entered the Detention Center. Harley attests that all inmate cells are locked at night, and that while there are no call boxes in the area, the person in the control booth can see and hear the area. Harley attests that he unlocked a cell door for the Plaintiff from the control booth, then stepped from the booth into the area of the cell and watched Plaintiff enter. Harley attests that Plaintiff was placed in a cell with inmate Michael Hartwell, and



that he knew of no reason why the Plaintiff and Hartwell should not be cell mates. Harley further attests that although he stepped into the cell area to watch Plaintiff enter, even if he had chosen to remain in the control booth, this would not have been a violation of Detention Center policy.

Harley attests that he returned to the booth and started doing some paperwork, when he heard Plaintiff yelling. Harley attests that he immediately went to the booth and manually opened the door. Harley attests that Plaintiff "is incorrect" when he alleges in his Complaint that he was beaten for ten minutes, as Plaintiff was not inside the cell for even a total of ten minutes, and that the cell door was opened within less than ten seconds of him [Harley] hearing a commotion. Harley attests that in an inmate altercation, the door is unlocked from inside the booth, because it will be necessary to remove one inmate rapidly and leave the other behind in the locked cell door. Harley attests that when he opened the cell door he saw Hartwell standing over the Plaintiff, and that he let the Plaintiff out, leaving Hartwell inside. Harley attests that Plaintiff had a laceration to his eyebrow area, but no other injuries that he could see. Specifically, he did not have a "chunk" bitten from his nose. Harley attests that he then escorted Plaintiff to the Regional Medical Center to obtain emergency medical treatment, which included suturing his eyebrow area, while another staffer moved Hartwell to lockdown.

Harley attests that he does not know the reason for the altercation between Plaintiff and Hartwell, and that following the altercation he never knew Plaintiff to express or show any fear or anxiety about Hartwell. With respect to Plaintiff's claim that he was fearful of coming out of his cell, Harley attests that Plaintiff served as "houseman" of his area of the Detention Center, a job that includes the inmate picking up trays, cleaning, and alerting officers to the needs of other inmates in exchange for some small pay. Harley further attests that, following the altercation, he never knew



of Plaintiff to complain of any pain from his injuries, nor voice any complaints about his medical care.  See generally, Harley Affidavit.

The Defendant Willie Bamburg has submitted an affidavit wherein he attests that he is the Director of the Orangeburg-Calhoun Regional Detention Center.  Bamburg attests that he had no personal involvement in any of the events set forth in the Complaint.  Bamburg attests that all inmate cells are locked at night, and that while there are no call boxes in the area, the person in the control booth can see and hear the area.  Bamburg attests that call boxes are not required for that area of the Detention Center, which was built before call boxes came into use in Detention centers.  Bamburg further attest that, while Harley states that after he unlocked a cell door for Plaintiff from the control booth, he stepped from the booth into the area of the cell to watch Plaintiff enter, that even if Harley had remained in the control booth, this would not have been a violation of Detention Center policy.

Bamburg attests that there is not sufficient space in a detention center to give each inmate a cell to himself, and that no person had any reason to believe that Plaintiff and Hartwell should not be placed together.  Bamburg attests that no threat was perceived, and that after the altercation he never knew of Plaintiff to express or show any fear or anxiety about Hartwell.  Indeed, Bamburg attests that Plaintiff was houseman of this area of the Detention Center, and that Plaintiff never complained to him or voiced any fear or feeling of risk, nor did Plaintiff ever complain to him concerning Plaintiff's injuries or his medical care.

Bamburg attests that the Detention Center uses the services of trained physicians and nurses as well as the nearby community hospital to provide medical and nursing care to its inmates. Bamburg attests that he does not have medical or nursing qualifications, and depends on these



trained professionals to render professional care. Bamburg attests that no problem with the care Plaintiff received was ever brought to his attention, that following the filing of this action he reviewed the information available, and that it appears that Plaintiff's medical needs were met.[4] See generally, Bamburg Affidavit.

Finally, the Defendant Bena Webber has submitted an affidavit wherein she attests that she is a registered nurse employed to provide nursing care to inmates at the Orangeburg-Calhoun Regional Detention Center. Webber has attached a copy of Plaintiff's relevant medical records to her affidavit as an exhibit. Webber attests that Plaintiff sustained a brow laceration on April 15, 2011 and was taken to the emergency department of the Regional Medical Center, where his injury was sutured. Webber attests that she removed the sutures some days later when the wound was healed. Webber attests that Plaintiff was also prescribed an antibiotic, Amoxicillin, which he received at the prescribed rate for the prescribed period. Webber attests that Plaintiff was not prescribed any Tylenol 3 (acetaminophen with codeine) nor any other narcotic for his injury, nor did he received any such prescription for anytime during his stay at the Detention Center. Webber attests that Plaintiff experienced a headache on April 26, 2011 (over ten days after his altercation with Hartwell) but did not indicate that it was related to his injuries. Plaintiff was given Tylenol, but was never prescribed a narcotic. Webber attests that, four months later, on August 26, 2011, Plaintiff complained of a headache from paint fumes, and was noted to have reddened eyes from that problem. Webber attests that Plaintiff was on medication for hypertension, and was again given Tylenol, but was not prescribed a narcotic.

---

[4]Plaintiff, who is now an inmate with the South Carolina Department of Corrections, is no longer incarcerated at the Detention Center.



Webber attests that Dr. Monnieque Singleton was briefly the Detention Center Physician, but that she can find no record that Plaintiff ever saw Dr. Singleton for this injury. Plaintiff did see a physician at the Regional Medical Center, but not Dr. Singleton. Webber further attests that Plaintiff never mentioned to her any fear of any other inmate, nor any feeling that he was at risk. Webber Affidavit, with attached Exhibits [Medical Records].

In his response to the Defendants' motion for summary judgment, the Plaintiff has submitted several pages of writing discussing the Defendants' evidence and contentions. This material is not sworn, and has therefore not been considered as evidence for purposes of the Defendants' summary judgment motion, although the undersigned has considered the arguments Plaintiff has made in relation to how it comports with the evidence of record.

**Discussion**

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts



which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Here, after careful review and consideration of the arguments and evidence presented, the undersigned finds and concludes that the Defendants are entitled to summary judgment in this case.

First, since Plaintiff is no longer incarcerated at the Detention Center, to the extent he is seeking injunctive and/or declaratory relief, his claims are moot. Slade v. Hampton Roads Reg'l Jail, 407 F.3d 243, 248-249 (4th Cir. 2005)[holding that former detainee's request for injunctive relief was moot]; Taggart v. Oklahoma, 74 Fed.Appx. 880, 882 (10th Cir. 2003)[inmate's claims concerning his medical needs against prison officials for injunctive relief were rendered moot by his release]; LaFlame v. Montgomery County Sheriff's Dep't., 3 Fed.Appx. 346 at * * 1 (6th Cir. Jan. 31, 2003)[same]. Plaintiff's claim for monetary damages survives his release from the Detention Center; see Mawhinney v. Henderson, 542 F.2d 1, 2 (2d Cir. 1976); and as public officials, the Defendants are all subject to suit for damages in their individual capacities in a § 1983 lawsuit. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989); Hafer v. Melo, 112 S.Ct. 358, 365 (1991); Goodmon v. Rockefeller, 947 F.2d 1186, 1187 (4th Cir. 1991). Liberally construed, Plaintiff is seeking damages against the Defendants in their individual capacities. However, for the reasons set forth hereinbelow, the undersigned does not find that the evidence is sufficient to create a genuine issue of fact as to whether any named Defendant violated Plaintiff's constitutional rights.

The Eighth Amendment is used to evaluate conditions of confinement for those convicted of crimes. Since Plaintiff was a pre-trial detainee during the time period set forth in the complaint, however, his claims are evaluated under the due process clause of the Fourteenth Amendment; Bell v. Wolfish, 441 U.S. 520, 535 (1979); although for purposes of consideration of



Plaintiff's claims, the standard of whether Plaintiff received constitutionally adequate medical care and/or his conditions of confinement met constitutional muster is essentially the same. See Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988)[Holding that the 14th Amendment guarantees at least 8th Amendment protections]. Under this standard, in order to proceed with his claim for denial of adequate medical care, Plaintiff must present evidence sufficient to create a genuine issue of fact as to whether any named Defendant was deliberately indifferent to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Farmer v. Brennen, 511 U.S. 825, 837 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986); Wester v. Jones, 554 F.2d 1285 (4th Cir. 1977); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975); Belcher v. Oliver, 898 F.2d 32 (4th Cir. 1990). As for the assault, Plaintiff must submit evidence sufficient to give rise to a genuine issue of fact as to whether any named Defendant was deliberately indifferent to a known risk of harm to him from inmate Hartwell, the standard for proving that claim. Pruitt v. Moore, No. 02-395, 2003 WL 23851094, at * 9 (D.S.C. July 7, 2003) (citing Slakan v. Porter, 737 F.2d 368, 372-373 (4th Cir. 1984)). Plaintiff has failed to submit any such evidence.

With respect to Plaintiff's claim that the Defendants put his personal safety at risk by housing him with inmate Hartwell in the first instance, and then by allowing them to be in the same jail area after Hartwell as released from lockup, in order to avoid summary judgment Plaintiff's evidence must demonstrate both that he was detained or incarcerated"under conditions posing a substantial risk of serious harm"; Brown v. Harris, 240 F.3d 383, 388-389 (4th Cir. 2001), quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994); and that the offending official(s) had "a sufficiently culpable state of mind". Farmer, 511 U.S. at 834. In other words, a jail official cannot be found liable for a constitutional violation "unless the official knows of and disregards an excessive risk to



inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference". Farmer, 511 U.S. at 837; see also Pruitt, 2003 WL 23851094 at * 9 [Deliberate or callous indifference on the part of prison officials to a specific known risk of harm states a constitutional claim]; Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997 WL 112833 (N.D.Ill. Mar. 11, 1997)["A defendant acts with deliberate indifference . . . if he or she 'knows of and disregards' an excessive risk to inmate health or safety].

The evidence before the Court is not sufficient to give rise to a genuine issue of fact that any named Defendant was deliberately indifferent to a known risk of harm to the Plaintiff, as the evidence, considered in the light most favorable to the Plaintiff, fails to reveal any advance knowledge by Harley or anyone else at the jail that Hartwell harbored any type of animosity towards the Plaintiff, or that there was any danger associated with placing Plaintiff in the same cell with Hartwell. There is no evidence to show that Hartwell had ever made any threats against the Plaintiff, that it had ever been determined that Plaintiff and Hartwell should not share a cell or that Hartwell was otherwise unreasonably dangerous, or indeed that Hartwell had ever carried out any threats or acts of violence against the Plaintiff or anyone else prior to the incident at issue in this lawsuit. Hence, there is no evidence that Harley or anyone else at the jail acted with deliberate indifference to a known risk of harm to the Plaintiff when he was placed in the same cell with Hartwell. Farmer, 511 U.S. at 842 [To establish a prima facie case of deliberate indifference a plaintiff must show "that a substantial risk of [serious harm] was long standing, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it"];



cf. Parrish v. ex rel. Lee v. Cleveland, 372 F.3d 294, 302-303 (4th Cir. 2004)[Situation must be evaluated as the officers reasonably perceived it, "not as it now may be perceived enlightened by the benefit of hindsight"].[5] Further, while Plaintiff contends it took too long for Officer Harley to come to the cell once the assault began, there is no evidence to support this general and conclusory supposition. It is undisputed in the record that Harley responded to Plaintiff's cries for help, that his response time was sufficiently quick to prevent Plaintiff from receiving any significant injuries from the attack [see Plaintiff's medical records], and there is no evidence to show that Harley displayed any deliberate or callous indifference to Plaintiff's plight. House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]; Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) ["Even though pro se litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"].

As for Plaintiff's Complaint that, following Hartwell's release from lockup, he was

---

[5] Although Plaintiff asserts as a further basis for relief that Harley should have left the control booth and walked him to his cell, rather than simply directing Plaintiff down to the cell while never leaving the control booth, the Defendants have submitted evidence to show that none of Harley's actions violated any policies or procedures of the jail. In any event, even if the Court were to assume for purposes of summary judgment that Harley did not follow jail policy or procedure in this instance, as Plaintiff alleges, that does not amount to a constitutional violation. Keeler v. Pea, 782 F.Supp. 42, 44 (D.S.C. 1992) [violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983]); see also Scott v. Hamidullah, No. 05-3027, 2007 WL 904803 *5 n.6 (D.S.C. Mar. 21, 2007) (citing Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990)); Johnson v. S.C. Dep't of Corrections, No. 06-2062, 2007 WL 904826 at *12 (D.S.C. Mar. 21, 2007) ["Plaintiff's allegation that Defendants did not follow their own policies fails, as the failure of prison officials to follow their own policies or procedures, standing alone, does not amount to a constitutional violation."] (citing Riccio, 907 F.2d at 1469 [if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue]).



placed in the general population where he would have had access to the Plaintiff, Plaintiff's evidence again fails to show a deliberate indifference to a known risk of harm to the Plaintiff. First, there is no evidence whatsoever that Hartwell ever again constituted a threat to the Plaintiff following the initial fight between these two inmates. There is no evidence of any additional threats by Hartwell, nor is there evidence of any other physical altercation between these two inmates during the period of time they were both incarcerated at the Detention Center. As for Plaintiff's statement in his Complaint that, because Hartwell was in the general population of the jail, he [Plaintiff] was too afraid to come out of his cell, the Defendants have submitted evidence (which Plaintiff has not contested in any way) to show that Plaintiff served as a "houseman" of his area of the Detention Center and moved about freely. See Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995)[Explaining that while the party opposing summary judgment is entitled to the benefit of inferences that can be drawn from the evidence, "[p]ermissible inferences must still be within the range of probability" and that "[w]hether an inference is reasonable cannot be decided in a vacuum; it must be considered in light of the competing inferences to the contrary"(internal quotation marks omitted)]; see also Neal v. Shimoda, 131 F.3d 818, 828 (9th Cir. 1997) ["[A] prisoner does not have a constitutional right to be housed at a particular institution,..., [or] to receive a particular security classification...."]. Even assuming for purposes of summary judgment that Plaintiff did actually fear that Hartwell might attack him, such a concern is insufficient in and of itself to establish a failure to protect claim. In addressing a similar claim, the United States District Court for the Southern District of Mississippi held:

> The Court finds that the mere fear of an attack happening is insufficient to establish a failure-to-protect claim. Plaintiff was not injured and has suffered no damages. Any damages resulting from his mental distress for being worried about being



attacked are not cognizable under the law. Regardless of whether his fears were justified, there can be no constitutional violation if he was not harmed.

Singleton v. Horne, No. 9-55, 2011 WL 3290356 at * 3 (S.D.Miss. Aug. 1, 2011). Therefore, Plaintiff's failure to protect claim is subject to dismissal.

With respect to Plaintiff's medical claim, there is no evidence to show that Plaintiff received improper medical care or treatment as a result of this assault. To the contrary, the evidence before the Court shows that Plaintiff was promptly transferred to a regional medical center, where he received medical care for this injuries. Further, these medical records specifically show that the only injury Plaintiff sustained was a laceration on his brow. There was no injury to his nose, nor is there any evidence whatsoever that Nurse Weber or any other Defendant failed to provide him with the medication he was prescribed by the attending physician. See Exhibit, Plaintiff's Medical Records. Indeed, the medical evidence before the Court reflects that Plaintiff's injuries, including his degree of pain, were "minimal". Id. Plaintiff has provided no medical evidence to dispute any of the Defendants' evidence, and nothing in the exhibits before the Court gives rise to a genuine issue of fact as to whether any named Defendant was deliberately indifferent to Plaintiff's serious medical needs, nor do they show that Plaintiff suffered any injury or aggravation of a medical condition based on the decisions made. See Weber Affidavit, with attached Medical Records.

In contrast to the Defendants' evidence from a licensed medical professional as well as hospital and other records, Plaintiff only generally alleges in his Complaint that medical personnel refused to provide him the treatment he desired. Such allegations are not sufficient to allow this claim to proceed. See Scheckells v. Goord, 423 F.Supp. 2d 342, 348 (S.D.N.Y. 2006) (citing O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ["Lay people are not qualified to



determine...medical fitness, whether physical or mental; that is what independent medical experts are for."]); Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985)[Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim absent exceptional circumstances]. While Plaintiff may not agree with the extent and nature of the medical care he received, he cannot simply allege in a conclusory fashion that he did not receive constitutionally adequate medical care or attention, otherwise provide no supporting evidence, and expect to survive summary judgment, particularly when the Defendants have submitted medical documents and evidence which refute his claims. See House, 824 F.Supp. at 485 [Plaintiff's conclusory allegations insufficient to maintain claim]; Morgan, 829 F.2d at 12 ["Even though pro se litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"]; Green v. Senkowski, 100 Fed.Appx. 45 (2d Cir. 2004) (unpublished opinion) [finding that plaintiff's self-diagnosis without any medical evidence insufficient to defeat summary judgment on deliberate indifference claim]; Levy, No. 96-4705, 1997 WL 112833 ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"], quoting Farmer, 511 U.S. at 837 (1994).

Plaintiff may, of course, pursue a claim in state court if he believes the medical care he received while at the Detention Center was inadequate. However, the evidence before the Court is insufficient to raise a genuine issue of fact as to whether any named Defendant was deliberately indifferent to his serious medical needs, the standard for a constitutional claim, and therefore Plaintiff's federal § 1983 medical claim should be dismissed. See DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200-203 (1989) [§ 1983 does not impose liability for violations of duties of care arising under state law]; Baker v. McClellan, 443 U.S. 137, 146 (1976) [§ 1983



claim does not lie for violation of state law duty of care]; Estelle v. Gamble, 429 U.S. 97, 106 (1976)["medical malpractice does not become a constitutional violation merely because the victim is a prisoner."]; see also Brooks v. Celeste, 39 F.3d 125 (6th Cir. 1994); Sellers v. Henman, 41 F.3d 1100 (7th Cir. 1994); White v. Napoleon, 897 F.2d 103, 108-109 (3d Cir. 1990); Smart v. Villar, 547 F.2d 112 (10th Cir. 1976) [affirming summary dismissal].

## Conclusion

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted**, and that this case be **dismissed**.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

April 24, 2012
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

